# UNITED STATES COURT OF APPEALS

# FOR THE FOURTH CIRCUIT

_____

### No. 13-1954
### (5:12-CV-00081-FL)

_____

SCOTTSDALE INSURANCE COMPANY,

Plaintiff - Appellee,

v.

CHILDREN'S HOME SOCIETY OF NORTH CAROLINA, INC.; RONALD E.
FORD, SR., Administrator of the Estate of S.P.

Defendants-Appellants.

_____

### SCOTTSDALE INSURANCE COMPANY'S
### MOTION TO DISMISS FOR LACK OF STANDING

_____


NOW INTO COURT, through undersigned counsel, comes plaintiff-appellee Scottsdale Insurance Company ("Scottsdale"), who moves this Honorable Court for an order dismissing the appeal of Ronald E. Ford, Sr., as Administrator of the Estate of S.P. ("Estate"), because the Estate lacks standing to prosecute this appeal.

Following the initiation of the declaratory judgment action by Scottsdale against both its insured (Children's Home Society of North Carolina, Inc., or "CHS") and the third-party claimant (the Estate) seeking the court's determination of Scottsdale's obligation under certain insurance policies issued to CHS with respect to a lawsuit filed against CHS by the Estate, in September 2012 Scottsdale, CHS, and the Estate reached a confidential settlement with regard to the underlying lawsuit. In that confidential settlement agreement, CHS and Scottsdale agreed to an advance apportionment of the funding of the settlement proceeds issued to the Estate, with the final apportionment between CHS and Scottsdale, including whether a party would have to reimburse another, to be dependent upon the resolution of the declaratory judgment action by final judgment. Thus, although there remains an actual controversy between CHS and Scottsdale with respect to the interpretation of the insurance contract as it relates to the final apportionment of the settlement proceeds (Case. No. 13-1953), there is no longer any threatened injury to the Estate or actual controversy between the Estate and Scottsdale. Hence, the Estate does not have standing to prosecute this appeal.

## BACKGROUND

Scottsdale filed the action for Declaratory Judgment for the purpose of construing and interpreting the terms of an insurance contract issued by Scottsdale to CHS, with respect to an underlying lawsuit filed against CHS by the Estate

- 2 -

(hereinafter "Underlying Lawsuit"). In the Underlying Lawsuit, the Estate alleged that CHS, a North Carolina non-profit corporation engaged in the business of assisting in the arrangement of adoptions in exchange for payments from state and/or county departments of social services, negligently placed S.P. in the home of Lynn Paddock and Johnny Paddock. After his placement in the Paddock home, the Estate alleged that for over a year S.P. was the victim of a "physical, verbal and emotional torture and abuse" at the hands of his adoptive parents, eventually resulting in his wrongful death by asphyxiation in February 2006.

Following the initiation of the declaratory judgment action in February 2012, while the parties' cross-motions for summary judgment were pending before the United States District Court of the Eastern District of North Carolina, in September 2012 Scottsdale, CHS, and the Estate reached a confidential settlement agreement with regard to the Underlying Lawsuit. The settlement agreement in the Underlying Lawsuit, which was approved by the state trial court on October 31, 2012, contained a confidentiality provision and was filed under seal in that liability action. The parties informed the United States District Court for the Eastern District of North Carolina of the settlement of the underlying proceedings on November 20, 2012, noting that there remained an actual case or controversy in the declaratory judgment action (sufficient for the district court to enter a final declaratory judgment regarding the rights and obligations of the parties arising

PD.10372237.1

from the insurance contract between Scottsdale and CHS), as Scottsdale and CHS had agreed to an advance apportionment of the funding of the settlement as part of the confidential settlement agreement, with the final apportionment, including whether a party would have to reimburse another, to be dependent upon the resolution of this declaratory judgment action by final judgment.  *See* Notice of Settlement of Underlying Proceedings and Status Report Regarding Continued Controversy in this Action, ECF No. 50.

On July 3, 2013, the United States District Court for the Eastern District of North Carolina granted Scottsdale's cross-motion for summary judgment, which both CHS and the Estate have appealed to this Court.  *See* Order, July 3, 2004, ECF No. 60; Notice of Appeal of Defendant Children's Home Society of North Carolina, Inc., ECF No. 62; Notice of Appeal of Defendant Ronald E. Ford, Sr., Administrator of the Estate of S.P., ECF No. 64.

## ARGUMENT

### THIS COURT SHOULD DISMISS THE ESTATE'S APPEAL FOR LACK OF JURISDICTION BECAUSE THE ESTATE LACKS STANDING.

Article III of the Constitution requires an appellant to establish that it has "standing" to invoke the power of a federal court.  U.S. CONST. art. III.  *See, e.g., Horne v. Flores*, 557 U.S. 433, 445 (2009) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  To satisfy this "irreducible constitutional minimum of standing," the appellant must show: (1) that it suffers an actual or impending

injury; (2) that the injury is fairly traceable to the challenged action; and (3) that the injury is likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560, 564; *Massachusetts v. EPA*, 549 U.S. 497, 541-42 (2007); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). To satisfy the injury-in-fact element of this test, a party must have "suffered ... an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *White Tail Park v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (*quoting Lujan*, 504 U.S. at 560–61). In addition to these core constitutional requirements, there are other "prudential limitations" to standing, including the principle that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

When the declaratory judgment action was initially filed in February 2012, there was an actual case or controversy between Scottsdale on one side and CHS and the Estate on the other. *See, e.g., Nautilus Insurance Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 n.3 (4th Cir. 1994) ("A dispute between a liability insurer, its insured, and a third party with a tort claim against the insured over the extent of the insurer's responsibility for that claim is an "actual controversy" ..., even though the tort claimant has not yet reduced his claim against the insured to judgment"). Specifically, there was a dispute between Scottsdale and CHS with regard to

PD.10372237.1

Scottsdale's potential indemnity obligation towards CHS, with respect to the claims asserted against CHS by the Estate in the Underlying Lawsuit.[1]  The Estate was also a proper party to the declaratory judgment action in the district court at the time the action was filed, because the Estate stood to gain or lose by the direct legal operation of the declaratory judgment sought.  *See Maryland Cas. Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273-74 (1941) (holding that a third-party claimant is a proper party to a declaratory relief action between the insurer and its insured to determine the scope of insurance coverage).

Following the settlement of the Underlying Lawsuit, the Estate cannot in this appeal show any "actual or impending injury" that would result from any decision in this action.  This Court's decision will not have any bearing on how much the Estate will receive in settlement proceedings in the underlying matter, as the Estate agreed to the set amount already paid to it in the underlying settlement, and dismissed the Underlying Lawsuit with prejudice.  The Estate will get no more or no less regardless of the decision of this Court.  That is, the Estate no longer stands to gain or lose by the direct legal operation of the declaratory judgment sought.

---

[1]  In short, Scottsdale contended any indemnity coverage of the claims and damages asserted in the Underlying Lawsuit would be limited to the coverage afforded under the Policies' Sexual and/or Physical Abuse Liability Coverage Form.  Conversely, CHS (and the Estate) contended there was coverage beyond the Sexual and/or Physical Abuse Liability Coverage Form.

PD.10372237.1

The only remaining "case or controversy" relates to how the final settlement in the Underlying Lawsuit will be apportioned between Scottsdale and CHS. Because of the outstanding disagreement between CHS and Scottsdale with regard to the final apportionment of the funding of the settlement in the Underlying Lawsuit, there was (and is) a case or controversy between CHS and Scottsdale, sufficient for the district court, and this Court, to rule on the proper interpretation of the Policies (Case No. 13-1953). *See Panhandle Eastern Pipe Line Co. v. Michigan Consol. Gas Co.*, 177 F.2d 942 (6th Cir. 1949) (holding that "where there is [a] controversy as to the meaning and effect of a written contract[,] interpretation may be sought from and made by the declaratory judgment of a court having jurisdiction over the parties"). The Estate, however, has no cognizable interest in this final apportionment, in that it will suffer no injury no matter what this Court decides with respect to CHS's appeal of the district court's decision. *See Ridpath v. Board of Governors Marshall University*, 447 F.3d 292, 305 (4th Cir. 2006) ("[F]or standing to appeal, a party must be 'aggrieved' by a trial court's judgment"); *U.S. v. Adamant Co.*, 197 F.2d 1, 5 (9th Cir. 1952) ("In order that a judgment be appealable at the behest of a party, the party must be aggrieved by it"); *Milgrams v. Loew's, Inc.*, 192 F.2d 579, 586 (3rd Cir. 1951) ("It is settled law that even a party cannot appeal from a decision which is not adverse to him").

PD.10372237.1

The Estate may attempt to argue that there are beneficiaries of the Estate who would be impacted by this final apportionment, in that there are two other newer lawsuits against CHS by S.P.'s siblings, which were filed after the confidential settlement of the Estate's case, and which are currently pending in the Superior Court of Johnston County, North Carolina, such that any decision in this action will impact the aggregate limits under the Policies available for those subsequent actions.[2]  However, the Estate is its own independent entity under North Carolina law, authorized to bring the underlying wrongful death lawsuit, defend against Scottsdale's declaratory judgment action, and "*settle claims in [its own] favor*...."  N.C. Gen. Stat. §§ 28A-13-3(a)(15), (23) (emphasis added).  That some of the beneficiaries of the Estate have separate lawsuits pending involving similar claims does not change the fact that the interests of the Estate itself in this appeal are extinguished (with the state trial court's approval) through the settlement of the underlying matter.[3]  To the extent the Estate now attempts to

---

[2]  *See Vorenkamp, et al. v. Children's Home Society of North Carolina, Inc*., Johnston County Superior Court Case No. 12 CVS 3643; *Hammersley, et al. v. Children's Home Society of North Carolina, Inc*., Johnston County Superior Court Case No. 13 CVS 2027.

[3]  Notably, counsel for the Estate represented to the district court (in moving to intervene on behalf of two of S.P.'s siblings, whom counsel also represents) that the judicial approval of the expenses incurred by the Estate in pursuing the wrongful death claims "did *not* include future expenses associated for any appeal that might be pursued from [the district court's] declaratory judgment."  Applicants' Memorandum of Law in Support of Their Motion to Intervene as Defendants 11, ECF No. 52 (emphasis in original.)

PD.10372237.1

claim the existence of an "actual controversy" due to the purported interests of the individual beneficiaries, the Estate simply "cannot rest [its] claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. *See also HCA Health Services of Virginia v. Metropolitan Life Ins. Co*., 957 F.2d 120 (4th Cir. 1992) ("An injury in fact is required for a party to be aggrieved for purposes of being able to appeal; the party's desire for better precedent does not by itself confer standing to appeal"). *See also Central States, Se. & Sw. Areas Pension Fund v. Central Transp., Inc*., 841 F.2d 92, 95–96 (4th Cir.1988) (noting that when there is no case or controversy in the constitutional sense, including when an event pending appeal makes it impossible to provide relief, an Article III court is without jurisdiction to adjudicate); *First Nat. Bank of Hagerstown v. Crissinger*, 279 F. 818 (4th Cir. 1922) (holding that officers of bank had no interest entitling them to maintain an appeal after they had sold their stock and resigned their offices).

## CONCLUSION

Under these circumstances, there is no "actual or impending injury" and no actual "case or controversy" between Scottsdale and the Estate. Accordingly, the Estate's appeal is properly dismissed.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

PD.10372237.1

Respectfully submitted,


PHELPS DUNBAR LLP


s/ Kevin M. O'Brien_____
Kevin M. O'Brien,
obrienk@phelps.com
Robert M. Kennedy, Jr.
robert.kennedy@phelps.com
GlenLake One
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612-3723
Telephone:919-789-5300
Facsimile: 919-789-5301
*Attorneys for Plaintiff-Appellee*
*Scottsdale Insurance Company*

September 19, 2013

PD.10372237.1

## LOCAL RULE 27(a) Certification

Scottsdale Insurance Company, by and through its undersigned counsel, states that counsel for all other parties to the appeal were informed of Scottsdale Insurance Company's intent to file this motion.  Children's Home Society of North Carolina, Inc. does not oppose this motion and does not intend to file a response in opposition.   Ronald. E. Ford, Sr., Administrator of the Estate of S.P. does not consent to the granting of the motion and intends to file a response in opposition.

PHELPS DUNBAR LLP

s/  Kevin M. O'Brien
Kevin M. O'Brien,
obrienk@phelps.com
Robert M. Kennedy, Jr.
robert.kennedy@phelps.com
GlenLake One
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612-3723
Telephone:  919-789-5300
Facsimile:   919-789-5301
*Attorneys for Plaintiff-Appellee Scottsdale
Insurance Company*

PD.10372237.1

# UNITED STATES COURT OF APPEALS

# FOR THE FOURTH CIRCUIT

_____

**No. 13-1954**
**(5:12-CV-00081-FL)**

_____

SCOTTSDALE INSURANCE COMPANY,

Plaintiff - Appellee,

v.

CHILDREN'S HOME SOCIETY OF NORTH CAROLINA, INC.; RONALD E.
FORD, SR., Administrator of the Estate of S.P.

Defendants-Appellants.

_____

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin M. O'Brien, hereby certify that on September 19, 2013, I
electronically filed the foregoing Motion of Scottsdale Insurance Company to
Dismiss for Lack of Standing with the Clerk of Court of the United States
Court of Appeals for the Fourth Circuit by using the CM/ECF system. The
following participants in the case who are registered CM/ECF users will be
served by the CM/ECF system.

R. Thompson Wright
tom.wright@hillevans.com
Joseph R. Beatty
joe.beatty@hillevans.com
Hill, Evans, Jordan & Beatty, PLLC
PO Box 989
Greensboro, North Carolina 27402
*Attorneys for Defendant-Appellant Children's Home Society of North Carolina, Inc.*

Jerome P. Trehy, Jr.
trehy@nctrial.com
Twiggs, Beskind, Strickland, & Rabenau, P.A.
150 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
*Attorneys for Defendant-Appellant Ronald E. Ford, Sr., Administrator of the Estate of Sean Paddock*

PHELPS DUNBAR LLP


s/ Kevin M. O'Brien
Kevin M. O'Brien,
obrienk@phelps.com
Robert M. Kennedy, Jr.
robert.kennedy@phelps.com
GlenLake One
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612-3723
Telephone: 919-789-5300
Facsimile: 919-789-5301
*Attorneys for Plaintiff-Appellee Scottsdale Insurance Company*