No. 13-1953(L); 13-1954
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT
_____

SCOTTSDALE INSURANCE COMPANY,

Plaintiff - Appellee,

v.

CHILDREN'S HOME SOCIETY OF NORTH CAROLINA, INC.;
RONALD E. FORD, SR., Administrator of the Estate of S.P.

Defendants-Appellants.

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF NORTH CAROLINA
_____

## BRIEF FOR PLAINTIFF-APPELLEE
## SCOTTSDALE INSURANCE COMPANY
_____

Kevin M. O'Brien
obrienk@phelps.com
Robert M. Kennedy, Jr.
robert.kennedy@phelps.com
PHELPS DUNBAR, LLP
GlenLake One
4140 Park Lake Avenue
Suite 100
Raleigh, North Carolina 27612
Phone: 919-789-5300
Fax: 919-789-5301

Dated: February 24, 2014

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No.  13-1953(L), 13-1954  Caption: <u>Scottsdale Ins. Co. v. Children's Home Society of NC, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Scottsdale Insurance Company</u>

(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

                                                                              ☑ YES ☐ NO
2.    Does party/amicus have any parent corporations?
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

      Scottsdale Insurance Company is a wholly owned subsidiary of Nationwide Mutual Insurance Company

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                            ☐ YES ☑ NO
      If yes, identify all such owners:

i

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _s/ Kevin M. O'Brien._____    Date: ____February 24, 2014_____

Counsel for: _Plaintiff-Appellee Scottsdale_____

# **TABLE OF CONTENTS**

TABLE OF CASES, STATUTES, AND AUTHORITIES.........................................iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.......1

    1. District Court Jurisdiction ................................................................1

    2. Appellate Court Jurisdiction ............................................................2

ISSUE PRESENTED FOR REVIEW ...................................................................2

STATEMENT OF THE CASE..............................................................................3

STATEMENT OF THE FACTS ...........................................................................4

    1. The Policies .....................................................................................4

    2. The Underlying Lawsuit ..................................................................8

    3. The Present Coverage Action ..........................................................9

SUMMARY OF ARGUMENT ...........................................................................11

ARGUMENT .....................................................................................................13

    1. Standard of Review .......................................................................13

    2. Discussion of Issues .....................................................................15

        a. The SPAE is valid, unambiguous and applicable to all injuries
           alleged in the Underlying Complaint .................................15

           i. The SPAE, read as a whole, is not overly broad ....................15

           ii. The SPAE applies to any alleged mental abuse ......................20

               1. The parties are bound by the SPAE's definition of
                  "Sexual and/or Physical abuse"....................................21

               2. Mental abuse need not "flow from" physical abuse......25

b.  The SPALCF provides the only coverage for the injuries alleged in the Underlying Lawsuit.................................................................30

i.  The SPAE applies to all claims against CHSNC, including claims for wrongful death   ...................................................30

ii.  Even if the SPAE did not apply, Coverage B is not even nominally triggered................................................................33

iii.  The E&O Coverage Form excludes any claims covered under CGL form...........................................................................37

CONCLUSION STATING PRECISE RELIEF SOUGHT   .......................................38

REQUEST FOR ORAL ARGUMENT  ........................................................................38

CERTIFICATE OF COMPLIANCE  ..........................................................................39

CERTIFICATE OF SERVICE ......................................................................................

iv

# TABLE OF CASES, STATUTES, AND AUTHORITIES

## CASES

*Allstate Ins. Co. v. Bates*, 185 F. Supp. 2d 607 (E.D.N.C. 2000)............................31

*American Family Mut. Ins. Co. v. Co Fat Le*, 439 F.3d 436 (8th Cir. 2006) ...........31

*Austin Mut. Ins. Co. v. Klande*, 563 N.W.2d 282 (Minn. Ct. App.1997).......... 32-33

*Bishop v. National Health Ins. Co.*, 344 F.3d 305 (2nd Cir. 2003) .................... 16-17

*Burrell v. Sparkkles Reconstruction Co.*, 657 S.E.2d 712 (N.C. Ct. App. 2008)....24

*C.D. Spangler Constr. Co. v. Indus. Crankshaft and Eng'g Co.*,
    388 S.E.2d 557 (N.C. 1990) ........................................................................14

*Case v. Stewart*, Case No. 3:03 CV 388, 2007 WL 37741
    (W.D.N.C. 2007) ........................................................................... 37

*Catawba Valley Machinery Co. v. Aetna Ins.* Co., 185 S.E.2d 308
    (N.C. Ct. App. 1971) ......................................................................19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................13

*Chadwick v. Fire Ins. Exchange*, 21 Cal. Rptr. 2d 871 (Cal. Ct. App. 1993) .........32

*Cole v. State Farm Fire & Cas. Co.*, 25 Fed. Appx. 791 (10th Cir. 2002) ..............35

*Cone Mills Corp. v. Allstate Ins. Co.*, 443 S.E.2d 357 (N.C. Ct. App. 1994) .........14

*Connecticut Medical Ins. Co. v. Kulikowski*, 942 A.2d 334 (Conn. 2008) .............18

*Donoghue v. IBC USA (Publications), Inc.*, 70 F.3d 206 (1st Cir.1995) ................17

*Estate of Fennell v. Stephenson*, 528 S.E.2d 911 (N.C. Ct. App. 2000) .................36

*FileNet Corp. v. Chubb Corp.*, 735 A.2d 1203 (N.J. Super. Ct. Law Div. 1997)...18

*Fire Ins. Exchange v. Bently*, 953 P.2d 1297 (Colo. App. 1998) ...........................36

*Flores v. AMCO Ins. Co.*, Case No. CVF071183LJODLB, 2007 WL 3408255
    (E.D. Cal. 2007)..............................................................................31

*Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004) ......................... 1

*Guyther v. Nationwide Mut. Fire Ins. Co.*, 428 S.E.2d 238
    (N.C. Ct. App. 1993) ..................................................................... 13-14

*Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605
    (N.C. 2010) ........................................................................................ 21

*Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724 (8th Cir. 2012) ..................... 22, 23

*Hemric v. Groce*, 609 S.E.2d 276 (N.C. Ct. App. 2005) ......................................... 27

*Highwoods Properties, Inc. v. Executive Risk Indem., Inc.*, 407 F.3d 917
    (8th Cir. 2005) ............................................................................... 15, 16

*Irving v. Mazda Motor Corp.*, 136 F.3d 764 (11th Cir. 1998) ................................. 20

*Jack v. Tracy*, 722 A.2d 869 (Me. 1999) ............................................................... 36

*Longaberger Co. v. U.S. Fidelity & Guar. Co.*, 31 F. Supp. 2d 595
    (S.D. Ohio 1998) ................................................................................ 17

*Massachusetts Bay Ins. Co. v. Bushmaster Firearms, Inc.*, 324 F. Supp. 2d 110
    (D. Me. 2004) ..................................................................................... 35

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...... 13

*McIntyre v. Josey*,  79 S.E.2d 202 (N.C. 1953) ...................................................... 37

*Miller v. McClure*, 742 A.2d 564 (N.J. Super. Ct. App. Div. 1998) ....................... 23

*Mountain States Mut. Cas. Co. v. Hauser*, 221 P.3d 56 (Colo. App. 2009) ...... 35-36

*Nautilus Ins. Co. v. K. Smith Builders, Ltd.*, 725 F. Supp. 2d 1219
    (D. Haw. 2010) .................................................................................. 26

*Nautilus Ins. Co. v. Our Camp Inc.*, 136 F. App'x 134 (10th Cir.2005) .................. 31

*North Carolina Farm Bureau Mut. Ins. Co. v. Fowler ex rel. Rudisill*,
    589 S.E.2d 911 (N.C. Ct. App. 2004) ............................................... 19

*Philbrick v. Liberty Mut. Fire Ins. Co.*, 934 A.2d 582 (N.H. 2007) ....................... 31

*Red Panther Chemical Co. v. Insurance Co. of State of Pa.*, 43 F.3d 514
(10th Cir. 1994) ............................................................... 17

*Register v. White*, 599 S.E.2d 549 (N.C. 2004) ...................... 18

*Resource Bank v. Progressive Cas. Ins. Co.*, 503 F. Supp. 2d 789
(E.D. Va. 2007) ............................................................. 23-24

*Rice v. Genentech, Inc.,* 491 Fed. Appx. 940 (11th Cir. 2012) .................... 1

*Russ v. Causey*, 732 F. Supp. 2d 589 (E.D.N.C. 2010) ........................... 19

*Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991) ............................. 13

*Scottsdale Ins. Co. v. Educ. Mgmt. Inc.*, Case No. CIVA 04-1053,
2006 WL 2803052 (E.D. La. 2006) .................................. 27, 28, 29

*Sentry Claims Service v. Botwick*, Case No. CV030477960S,
2004 WL 1463004 (Conn. Super. Ct. 2004) ............................ 23

*Stanley v. Safeco Ins. Co. of America*, 747 P.2d 1091 (Wash. Ct. App. 1988) ....... 24

*Selective Ins. Co. v. Oglebay*, 242 Fed. Appx. 104 (4th Cir. 2007) .................. 34-35

*State Auto. Mut. Ins. Co. v. Hoyle*, 415 S.E.2d 764 (N.C. Ct. App. 1992) ............. 14

*State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66 (N.C. 1986) .... 32

*State Farm Ins. Co. v. Bruns*, 942 A.2d 1275 (N.H. 2008) ...................... 34

*State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc.*, 88 P.3d 986
(Wash. Ct. App. 2004) ......................................................... 25

*St. Paul Fire & Marine Ins. Co. v. Schrum*, 149 F.3d 878 (8th Cir. 1998) ............ 31

*Tzung v. State Farm Fire and Cas. Co.*, 873 F.2d 1338 (9th Cir. 1989) ............... 17

*U.S. v. Jefferson-Pilot Life Ins. Co.*, 49 F.3d 1020 (4th Cir. 1995) ................ 13

*Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 172 S.E.2d 518
(N.C. 1970) ................................................................... 14

*Walsh v. National Indem. Co.*, 343 S.E.2d 430 (N.C. Ct. App. 1986) ............... 14

*Westfield Ins. Co v. Merrifield*, 2008 WL 336789 (S.D.W.Va. 2008) ............... 31

*Woods v. Nationwide Mut. Ins. Co*., 246 S.E.2d 773 (N.C. 1978) ........14, 15, 21, 27

*Wilson v. Automobile Owners Ass'n Ins. Co*., 366 P.2d 654 (Colo. 1961) .............36

## <u>STATUTES</u>

28 U.S.C. § 1291 .............................................................................................2

28 U.S.C. § 1294 .............................................................................................2

28 U.S.C. § 1332 .............................................................................................1

N.C. Gen. Stat. § 28A-18-1..............................................................................36

N.C. Gen. Stat. § 28A-18-2..............................................................................36

## <u>RULES</u>

Fed. R. App. P. 4(a)(1)(A) .................................................................................2

Fed R. Civ. P. 56(c).........................................................................................13

## <u>AUTHORITIES</u>

Black's Law Dictionary (9th ed. 2009) .................................................................22

7 Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt,
    *Couch on Ins*. § 101:53 (2013) .......................................................................32

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

### 1. District Court Jurisdiction

The district court had diversity jurisdiction under 28 U.S.C. § 1332 (2006). The amount in controversy exceeds $75,000, exclusive of interests and costs.[1] There was also complete diversity of citizenships between plaintiff and defendants. Plaintiff Scottsdale Insurance Company ("Scottsdale") is a company organized and existing under the laws of the State of Ohio, with its principal place of business in Scottsdale, Arizona. Defendant Children's Home Society of North Carolina, Inc. ("CHSNC") is a company organized and existing under the laws of the State of North Carolina with its principal place of business in Guilford County, North Carolina. Defendant Ronald E. Ford, Sr., Administrator of the Estate of S.P., is a citizen and resident of Johnston County, North Carolina.

---

[1] Although the Estate did not specify the exact amount it is seeking in the Underlying Lawsuit, given the allegations in the Underlying Lawsuit and the respective limits of the Policies at issue, it is readily apparent that the amount in controversy exceeded the statutory threshold at the time of filing. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570–71 (2004) (noting that in diversity cases, "the jurisdiction of the Court depends upon the state of things at the time of the action brought"); *Rice v. Genentech, Inc.*, 491 Fed. Appx. 940, 941 n.2 (11th Cir. 2012) ("Although Rice's complaint did not allege that the amount in controversy exceeded the sum of $75,000, that it exceeded such amount is obvious given the nature of Rice's alleged injuries.") Indeed, even following the confidential settlement of the Underlying Matter, the controversy over the final apportionment of the funding of the settlement between CHSNC and Scottsdale is still in excess of the statutory threshold.

## 2. Appellate Court Jurisdiction

This Court has jurisdiction under 28 U.S.C. §§ 1291 and 1294(1) (2006) as this is an appeal from a final decision of the district court. Scottsdale's complaint sought a declaration of its obligations under two insurance policies issued to CHSNC. The declaratory judgment issues were resolved by the district court's memorandum opinion and order granting Scottsdale's motion for summary judgment and denying CHSNC's and the Estate's motions for summary judgment. On July 3, 2013, the District court entered final judgment for Scottsdale. On July 30, 2013, within thirty days, CHSNC timely filed its notice of appeal. On July 30, 2013, within thirty days, the Estate timely filed its notice of appeal.[2] Fed. R. App. P. 4(a)(1)(A).

### ISSUE PRESENTED FOR REVIEW

Whether the district court properly determined that the allegations of the Underlying Lawsuit were excluded from coverage under the Policies' Commercial General Liability Coverage Form and Errors and Omissions Coverage Part by the Sexual and/or Physical Abuse Exclusion endorsement and that any indemnity obligation to any party in connection with the Underlying Lawsuit, if any, was

---

[2]  It is nevertheless Scottsdale's position that the Estate no longer has standing to prosecute its appeal, given the settlement of the Underlying Lawsuit. (D.E. 22, Scottsdale's Motion to Dismiss for Lack of Standing)

2

limited to the $100,000 per claim and $300,000 aggregate limits of the Sexual and/or Physical Abuse Liability Coverage Form in the Policies.

## STATEMENT OF THE CASE

This is an insurance coverage dispute regarding the scope of Scottsdale's indemnity obligation under an insurance contract issued by Scottsdale to CHSNC, with respect to a lawsuit filed against CHSNC by the Estate ("Underlying Lawsuit"). The parties disagree as to the applicability of the Sexual and/or Physical Abuse Exclusion endorsement. If, as the district court agreed, the exclusion is applicable, the only coverage available for the claim and alleged damages in the underlying suit would be the coverage available under the Sexual and/or Physical Abuse Liability Coverage Form (with limits of $100,000 per claim; $300,000 aggregate).

On June 6, 2012, Scottsdale filed a motion for summary judgment. CHSNC filed its own motion for summary judgment on June 29, 2012, and the Estate also filed a motion for summary judgment on June 30, 2012. In September 2012, Scottsdale, CHS, and the Estate reached a confidential settlement with regard to the Underlying Lawsuit. In a confidential settlement agreement, CHS and Scottsdale agreed to an advance apportionment of the funding of the settlement proceeds issued to the Estate, with the final apportionment between CHS and Scottsdale, including whether one party would have to reimburse another, to be

dependent upon the resolution of the declaratory judgment action by final judgment.

On July 3, 2013, the Honorable United States District Judge Louise W. Flanagan entered an order granting Scottsdale's motion for summary judgment and denying CHSNC's and the Estate's respective motions for summary judgment. CHSNC appeals from that order. Although Scottsdale contends that it has no standing to do so, and consequently that its appeal should be dismissed, the Estate has also attempted to appeal that order. The two appeals were *sua sponte* consolidated by this Court.

## STATEMENT OF THE FACTS

### 1. The Policies

Scottsdale issued to CHSNC a general liability policy, Policy No. CLS1068579, for the period January 21, 2005 through January 21, 2006 and a renewed general liability policy, Policy No. CLS106857901, for the period January 21, 2006 through January 21, 2007 (collectively, the "Policies"). (JA 10-70) The Policies contain numerous forms, which described the coverages, including (relevant to this matter) a Commercial General Liability Coverage Form, an Errors and Omissions Coverage Part, a Sexual and/or Physical Abuse Exclusion endorsement ("SPAE"), and a Sexual and/or Physical Abuse Liability Coverage Form ("SPALCF"). (JA 16-30, 35-36, 37, 41-47) The SPAE generally excludes

coverage under both the Commercial General Liability Coverage Form and the Errors and Omissions Coverage Part for injuries arising out of "Sexual and/or Physical abuse."  (JA 37)  The SPALCF writes coverage for certain injuries arising out of "SEXUAL AND/OR PHYSICAL ABUSE" back into the Policies, albeit on a more limited basis.  (JA 35-36)

Specifically, the SPAE endorsement provides, in pertinent part, as follows:

### SEXUAL AND/OR PHYSICAL ABUSE EXCLUSION

This endorsement modifies insurance provided under:
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PROFESSIONAL LIABILITY COVERAGE PART
ERRORS AND OMISSIONS COVERAGE PART**

This policy does not apply to any injury sustained by any person arising out of or resulting from 'Sexual and/or Physical abuse" by:

1.  any insured;

2.  any of your 'Employees';

3.  any person performing volunteer services for you or own your behalf; or

4.  any other person.

We shall not have any duty to defend any suit against you seeking 'damages' on account of any such injury.

The intent of this endorsement is to exclude all injury sustained by any person, including emotional distress, arising out of 'Sexual and/or Physical abuse' including but not limited to 'Sexual and/or Physical abuse' caused by negligent employment, investigation, supervision, or reporting to the proper authorities, or failure to so report, or retention of a person for whom any insured is or ever was legally responsible.

The following Definitions are added to the policy:

1. "Sexual and/or Physical abuse" means sexual or physical injury or abuse, including but not limited to assault and battery, negligent or deliberate touching, corporal punishment and mental abuse.

*** 

3. "Damages" means all damages, including damages for death, which are payable because of injury to which this insurance applies.

All other terms and conditions remain unchanged.

(JA 37)

The SPALCF provides in pertinent part:

**SEXUAL AND/OR PHYSICAL ABUSE LIABILITY COVERAGE FORM**

**INSURING AGREEMENTS**

In consideration of the premium charged, we agree to afford coverage only with respect to Sexual and/or Physical Abuse Liability as indicated and subject to the limits of the liability of insurance as set forth in this coverage form and the exclusion, condition and other terms of this policy.

| LIMITS OF LIABILITY | COVERAGE |
|---|---|
| $ 100,000 each claim<br>$ 300,000 aggregate | Sexual and/or Physical Abuse Liability |

6

| Advance Premium | Premium Bases | Rates | Description of Hazards |
|---|---|---|---|
|  |  |  |  |
| $   400  TOTAL ADVANCE PREMIUM | | | |

## I.    COVERAGE – SEXUAL AND/OR PHYSICAL ABUSE LIABILITY

We will pay on your behalf all sums which you shall become legally obligated to pay as DAMAGES because of injury to any person arising out of SEXUAL AND/OR PHYSICAL ABUSE, caused by one of your EMPLOYEES, or arising out of your failure to properly supervise.

We shall have the right and duty to defend any suit against you seeking such DAMAGES, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and such settlement of any claim or suit as we deem expedient, but we shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of our liability has been exhausted.

*** 

## IV.    LIMITS OF LIABILITY

Regardless of the number of insureds under this policy, our liability is limited as follows:

The limit of liability stated in the schedule as applicable to each claim is the limit of our liability for all DAMAGES because of each claim or suit covered hereby.  The limit of liability stated in the schedule as aggregate, subject to the above provision regarding each claim, is the total limit of our liability under this Coverage for all DAMAGES

***

## VI.   DEFINITIONS

(a)       SEXUAL AND/OR PHYSICAL ABUSE means sexual or physical injury or abuse, including assault and battery, negligent or deliberate touching.

(b)       EMPLOYEE means any person, other than a PERSON INSURED, in your employment, including but not limited to persons with child caring responsibilities, attendants, janitors, bus drivers and volunteer workers.

(c)       DAMAGES means all damages, including damages for death, which are payable because of injury to which this insurance applies.

(JA 35-36)

## 2. **The Underlying Lawsuit**

In May 2012, the Estate filed a Fourth Amended Complaint[3] against Johnny Paddock ("Mr. Paddock"), Lynn Paddock ("Mrs. Paddock"), and CHSNC in the Superior Court for Johnston County, North Carolina, in a lawsuit styled *Ronald E. Ford, Sr., Administrator of the Estate of S.P. (formerly known as S.F.), decedent vs. Children's Home Society of North Carolina, Inc., Johnny Paddock, and Lynn Paddock*; Case No. 08 CVS 605 (the "Underlying Lawsuit"). (JA 239-279)  In the Underlying Lawsuit, the Estate alleged that CHSNC engaged in the business of

---

[3]    At the time the district court coverage action was filed in February 2012, the Third Amended Complaint was the operative complaint in the Underlying Lawsuit, and thus the Third Amended Complaint was attached to Scottsdale's Complaint for Declaratory Judgment. (JA 1) The Fourth Amended Complaint, which was the operative pleading at the summary judgment stage of the coverage action, was subsequently submitted to the district court. (JA 239-279)

assisting in the arrangement of adoptions in exchange for payments from state and/or county departments of social services. (JA 241) The Estate alleged that CHSNC was responsible for placing S.P. and his siblings in the home of Mr. and Mrs. Paddock in January 2005. (JA 258-262) From January 2005 through February 2006, after he was placed in their home with this assistance of CHSNC, Mr. and Mrs. Paddock allegedly subjected S.P. to numerous, repeated instances of abuse. (JA 254, 259, 263, 264, 266, 267, 268) This abuse ultimately led to S.P.'s wrongful death by asphyxiation at the hands of his adoptive parents on February 25-26, 2006. (JA 271-73) The Estate contended that CHSNC was "negligent in helping to arrange the adoptive placement" of S.P. with Mr. and Mrs. Paddock, and that this negligence was a proximate cause of the numerous emotional and physical injuries suffered by S.P., including his wrongful death. (JA 275-78) Scottsdale retained counsel for CHSNC and provided CHSNC with a defense in the Underlying Lawsuit subject to a reservation of rights under the Policies.

### 3. **The Present Coverage Action**

Scottsdale brought the present action seeking a declaration that the allegations of the Underlying Lawsuit were excluded from coverage under the Policies' Commercial General Liability Coverage Form and Errors and Omissions Coverage Part by the SPAE endorsement and that any indemnity obligation to any party in connection with the Underlying Lawsuit, if any, was limited to $100,000

per claim and $300,000 aggregate limits of the SPALCF in the Policies.  (JA 1)  In June 2012, the parties submitted cross motions for summary judgment.  (JA 350-373)  In its motion, Scottsdale contended that the allegations of the Underlying Lawsuit were excluded from coverage under the Policies' Commercial General Liability Coverage Form and Errors and Omissions Coverage Part by the SPAE endorsement and that any indemnity obligation to any party in connection with the Underlying Lawsuit, if any, was limited to $100,000 per claim and $300,000 aggregate limits of the SPALCF in the Policies.  (JA 350-358)  CHSNC and the Estate, conversely, sought a judgment declaring that the allegations of the Underlying Lawsuit were not excluded by the Policies' SPAE endorsement, and that any indemnity obligation to any party in connection with the Underlying Lawsuit was not limited to the limits provided in the SPALCF.  (JA 359-373)

The district court held that the SPAE was unambiguous and applicable to all injuries alleged in Underlying Complaint.  (JA 387)  The court rejected Defendants' arguments that the SPAE conflicts with the provisions of Coverage B, recognizing that although impacting Coverage B the SPAE did not totally eliminate coverage under the same.  (JA 388)  The court further rejected defendants' argument that coverage arose under Coverage B separate and apart from any coverage available under the SPALCF, holding that any purported acts of false imprisonment were also acts of physical abuse excluded by the Sexual and/or

Physical Abuse Coverage Form.  (JA 389)  The district court also rejected defendants' argument that coverage separately arose under the Errors & Omissions Coverage based on the Estate's claims of negligence against CHSNC, noting that the SPAE explicitly amended the Errors & Omissions Coverage Part and applied to any such claims because the alleged harm still arose from physical abuse.  (JA 391)  Finally, the court rejected the Estate's argument that the SPAE does not apply to non-contact emotional and verbal abuse, noting that the SPAE specifically states that it applies to "mental abuse."  (JA 392)

Accordingly, the district court granted summary judgment to Scottsdale and denied summary judgment to CHSNC and the Estate.  (JA 393)  The district court then entered judgment in favor of Scottsdale.  (JA 394)

## SUMMARY OF ARGUMENT

The district court did not commit error when it granted Scottsdale's Motion for Summary Judgment.  The allegations of the Underlying Lawsuit are excluded from coverage under the Policies' Commercial General Liability Coverage Form and Errors and Omissions Coverage Part by the SPAE endorsement and any indemnity obligation to any party in connection with the Underlying Lawsuit, if any, is limited to the $100,000 per claim and $300,000 aggregate limits of the SPALCF in the Policies.

Specifically, the Policies' SPAE endorsement is valid, unambiguous and applicable to all injuries alleged in the Underlying Complaint. The SPAE is not overbroad and applies to any alleged "mental abuse," as the as the term "Sexual and/or Physical abuse" is explicitly defined to include "mental abuse." The Estate's contention that only mental abuse that "flow[s] from physical abuse" is excluded by the SPAE is incorrect, as such a reading would require the insertion of additional language into the Policies, in direct contravention to North Carolina law.

Further, no matter how the Estate pled such a claim or how CHSNC might now try to characterize the same (whether as a claim for "wrongful death for which false imprisonment was a cause" or a claim for "false imprisonment"), S.P.'s injuries "arise out of" the horrific abuse suffered by S.P. at the hands of his adoptive parents; therefore, the SPAE applies to all claims in the underlying lawsuit, and no coverage independently arises under the Errors & Omissions Coverage Part or the Commercial General Liability Coverage Form (particularly Coverage B). Additionally, even if the SPAE did not apply to the instant facts, no coverage even nominally arises under Coverage B, as the Estate did not plead a claim for false imprisonment against CHSNC, nor could it under North Carolina law. Rather, the only coverage available for the claims asserted in the Underlying Lawsuit, if any, is limited to the $100,000 per claim and $300,000 aggregate limits of the SPALCF in the Policies.

For the foregoing reasons, the district court's judgment, therefore, should be affirmed.

## ARGUMENT

### 1.  Standard of Review

A summary judgment ruling is reviewed *de novo. U.S. v. Jefferson-Pilot Life Ins. Co.,* 49 F.3d 1020, 1021 (4th Cir. 1995); *see also Salve Regina Coll. v. Russell,* 499 U.S. 225, 231 (1991) (concluding that federal courts of appeal must review *de novo* district court determinations of state law).  On appeal, this Court applies the same standard the district court used under Federal Rule of Civil Procedure 56(c), which provides that summary judgment is proper where the pleadings, discovery on file and affidavits establish there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Any permissible inferences to be drawn from the evidence must be viewed in the light most favorable to the opponent. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986). However, the movant is entitled to summary judgment if the opponent fails to make a sufficient showing on an essential element of the case with respect to which the opponent has the burden of proof.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Under North Carolina law, the meaning of language used in an insurance contract is a question of law for the Court, *Guyther v. Nationwide Mut. Fire Ins.*

*Co.*, 428 S.E.2d 238, 241 (N.C. Ct. App. 1993), as is the "construction and application of the policy provisions to the undisputed facts." *Walsh v. National Indem. Co.*, 343 S.E.2d 430, 432 (N.C. Ct. App. 1986).  Where an insurance policy defines a term, that definition is to be used in interpreting the pertinent provision. *C.D. Spangler Constr. Co. v. Indus. Crankshaft and Eng'g Co.*, 388 S.E.2d 557, 563 (N.C. 1990).  If the language in an exclusionary clause contained in a policy is ambiguous, the clause is "to be strictly construed in favor of coverage." *State Auto. Mut. Ins. Co. v. Hoyle*, 415 S.E.2d 764, 765, *disc. review denied*, 417 S.E.2d 803 (N.C. 1992).  If such an exclusion is plainly expressed, however, it is to be construed and enforced as expressed.  *Cone Mills Corp. v. Allstate Ins. Co*., 443 S.E.2d 357, 359, *disc. review improvidently allowed*, 457 S.E.2d 300 (N.C. 1995).

A provision will be deemed ambiguous only if it is "fairly and reasonably susceptible to [different] constructions for which the parties contend." *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co*., 172 S.E.2d 518, 522 (N.C. 1970).  However, "if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein."  *Woods v. Nationwide Mut. Ins. Co*., 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978).  Individual provisions are not viewed in a vacuum; rather, the policy is viewed as a

whole.  *Id*.  Additionally, the Court must construe the policy based upon the facts before it, and one cannot claim a policy is ambiguous based upon a hypothetical not at issue.  *Highwoods Properties, Inc. v. Executive Risk Indem., Inc*., 407 F.3d 917, 923 (8th Cir. 2005) (applying North Carolina law).

## 2.  Discussion of Issues

### a.  The SPAE is valid, unambiguous and applicable to all injuries alleged in Underlying Complaint.

The language in the SPAE is clear and unambiguous, and is not "fairly and reasonably susceptible" to different constructions.  Indeed, even under the most narrow construction of its terms, the horrible abuse suffered by S.P. is the textbook definition of "physical" and "mental" abuse, and thus falls within the Policies' SPAE definition of "Sexual and/or Physical abuse."

### i.  The SPAE, read as a whole, is not overly broad.

CHSNC[4] asserts that the definition of "Sexual and/or Physical abuse" is so broad that it allegedly contradicts other liability coverages in the Policies and should be treated as invalid and ineffective.  (D.E. 33 at 17-23)  Specifically, CHSNC asserts that if "Sexual and/or Physical abuse" includes "Sexual and/or

---

[4]  The Estate generally adopts CHSNC's arguments with regard whether the Policies provide coverage for the Estate's claims under Coverage B or the Errors & Omissions Coverage Part, but never articulates its own independent theory as to how such coverage might arise.  *See* DE 37 at 12 ("[T]he Estate joins CHSNC in seeking a construction of the Scottsdale Policies that would provide liability coverage for all claims brought for S.P….")  Scottsdale adopts its arguments in opposition to the Estate's appeal, in this regard.

physical injury or abuse" by "any other person," any "physical injury" could be excluded and coverage for both "bodily injury" and "personal and advertising injury" (specifically, false detention or imprisonment) under the Policies is illusory. (*Id*. at 17-23) This argument is not only misplaced and irrelevant to this matter, but it is also belied by the Policies' documents.

As an initial matter, as was recognized by the district court, in determining the validity of an exclusion, the question is whether the exclusion is valid and applicable as to the facts before the court, not whether the exclusion might be invalid under a hypothetical or abstract factual scenario. (JA 386) *See also Highwoods Properties, Inc.,* 407 F.3d at 923 ("Context is often central to the way in which policy language is applied: the same language may be found both ambiguous and unambiguous as applied to different facts. We will apply the ordinary meaning of particular terms to the facts of the case to determine if it is ambiguous as to those facts."); *Donoghue v. IBC USA (Publications), Inc*., 70 F.3d 206, 215-16 (1st Cir.1995) (noting that "a party claiming to benefit from ambiguity ... must show ambiguity in the meaning of the agreement with respect to the very issue in dispute ... [because] courts consider contentions regarding ambiguity or lack of ambiguity not in the abstract and not in relation to hypothetical disputes that a vivid imagination may conceive but instead in relation to concrete disputes about the meaning of an agreement as applied to an existing controversy"); *Bishop*

*v. National Health Ins. Co*., 344 F.3d 305, 308-09 (2nd Cir. 2003) ("[T]he ambiguity must exist in the policy language as applied to the facts before us, not in the abstract. An ambiguity does not exist by virtue of the fact that one of a contract's provisions could be ambiguous under some other circumstances."); *Tzung v. State Farm Fire and Cas. Co*., 873 F.2d 1338, 1340 (9th Cir. 1989) ("[T]he court must construe the clause with regard to the contract as a whole, and its meaning is to be derived from the circumstances of the particular case and not in the abstract.") (citations omitted); *Red Panther Chemical Co. v. Insurance Co. of State of Pa*., 43 F.3d 514, 519 (10th Cir. 1994) ("Language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract."); *Longaberger Co. v. U.S. Fidelity & Guar. Co*., 31 F. Supp. 2d 595, 602 (S.D. Ohio 1998), *aff'd*, 201 F.3d 441 (6th Cir. 1999) (holding that "an exclusion clause can be unambiguous when applied to certain facts but ambiguous when applied to other facts"). Scottsdale is not arguing in this action that the SPAE excludes any type of "physical injury" unrelated to any abuse, assault and battery, negligent or deliberate touching, corporal punishment, and/or mental abuse. Rather, Scottsdale contends that the exclusion applies because of physical and mental abuse. And, without question, S.P.'s injuries were the result of physical and mental abuse, and thus are properly excluded under the SPAE. Whether one may attempt to argue

that the definition of "Sexual and/or Physical abuse" could encompass physical injuries unrelated to the above is wholly irrelevant and non-justiciable in this action. The Court cannot otherwise invalidate the exclusion simply because CHSNC might conjure a hypothetical scenario (i.e., where an insurer was attempting to exclude coverage based on any "physical injury"), even if the exclusion could be ambiguous under such hypothetical circumstances. *See Register v. White*, 599 S.E.2d 549, 553 (N.C. 2004) ("An ambiguity can exist when, even though the words themselves appear clear, the specific facts of the case create more than one reasonable interpretation of the contractual provisions"); *Connecticut Medical Ins. Co. v. Kulikowski*, 942 A.2d 334, 343 (Conn. 2008) ("There must be a nexus between the ambiguity and the disputed issue"); *FileNet Corp. v. Chubb Corp*., 735 A.2d 1203, 1218 (N.J. Super. Ct. Law Div. 1997) ("Merely seizing on a word or phrase which under other circumstances might be ambiguous but having no bearing upon the allegations as between the parties and attempting to create coverage or duties thereby is inconsistent with the theory underlying coverage and with the usual rules governing insurance contract construction").

Moreover, even if the Court were to accept CHSNC's invitation to parse up the definition and only consider the words "physical injury," without properly construing the definition as a whole, and even if the Court accepted the invitation

18

to construe those words in a vacuum, which it should not, no ambiguity exists regardless simply because the exclusion would be broad.  North Carolina courts generally uphold even broad exclusions so long as some underlying coverage remains.  *See, e.g., Russ v. Causey*, 732 F. Supp. 2d 589, 611-612 (E.D.N.C. 2010) ("Although the exclusion covering acts for which defendants maintain sovereign immunity is indeed broad enough to exclude most torts that would otherwise be covered by the policy, it is not so broad as to be illusory or internally inconsistent."); *North Carolina Farm Bureau Mut. Ins. Co. v. Fowler ex rel. Rudisill*, 589 S.E.2d 911, 913-14 (N.C. Ct. App. 2004) ("By definition, an exclusion limits the extent of the coverage set forth in an insurance policy. Simply because an exclusion limits coverage, however, does not, by itself, create an ambiguity in the policy."); *Catawba Valley Machinery Co. v. Aetna Ins. Co.*, 185 S.E.2d 308, 311 (N.C. Ct. App. 1971) ("We note that many insurance contracts have exclusion clauses which limit coverage. This is a well accepted and effective manner of specifically defining the actual coverage intended.")  In this instance, even if the Policies were to be read as excluding "physical injury…by any other person," there would still be a litany of claims that would be covered under the Commercial General Liability Coverage Form or the Errors and Omissions Coverage Part, including coverage for property damage or damages because of "personal and advertising injury."  Additionally, the Policies do provide coverage

for "DAMAGES" because of "SEXUAL AND/OR PHYSICAL ABUSE," notwithstanding the SPAE, as coverage for such claims, as defined, was written back into the Policies through CHSNC's purchase of coverage through the SPALCF. (The inclusion of the SPALCF, in tandem with the SPAE, shows that it was the exactly the intent of the contracting parties to provide only limited coverage to injuries arising out of "SEXUAL AND/OR PHYSICAL ABUSE.") In short, although the SPAE may be broad, there is still sufficient coverage within the Policies such that the Policies are not illusory or internally inconsistent.

### ii.  The SPAE applies to any alleged mental abuse

In this appeal, both CHSNC[5] and Estate assert that – even if the SPAE is otherwise valid and applicable to what they contend to constitute physical injuries suffered by S.P – it does not apply to the "non-physical-contact emotional and verbal abuse" suffered by S.P. (D.E. 33 at 36-39, D.E. 37 at 12-26). This argument is simply wrong, as the term "Sexual and/or Physical abuse" is explicitly defined by the Policies to include "mental abuse," which encompasses both "emotional" and "verbal" abuse.

---

[5]  Notably, while CHSNC does make the argument regarding "mental abuse" on appeal, it failed to adequately present the same to the court below. Because CHSNC did not make this argument below, the argument should be waived. *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998).

**1. The parties are bound by the SPAE's definition of "Sexual and/or Physical abuse"**

As an initial and controlling matter, the Court must consider that "Sexual and/or Physical abuse" is a defined term in the SPAE, notwithstanding the Estate's efforts to parse the same. "If the parties have defined a term in the agreement, then [the Court] must ascribe to the term the meaning the parties intended." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605, 612 (N.C. 2010). *See also Woods* 246 S.E.2d at 777 ("Where a policy defines a term, that definition is to be used.") Therefore, pursuant to North Carolina law of policy interpretation, this Court must construe the Policies using the clear definition of "Sexual and/or Physical abuse," as agreed by Scottsdale and CHSNC, and should not consider what the Estate would allegedly generally understand the parsed-up term to mean.

Construing the SPAE as a whole, as the Court must, the exclusion clearly and explicitly includes injuries arising out of mental abuse, including the "non-contact, emotional and verbal abuse" alleged by the Estate. Again, the definition of "Sexual and/or Physical abuse" in the SPAE specifically includes "mental abuse," and the SPAE further states that it is "the intent of this endorsement to exclude all injury sustained by any person, including emotional distress."[6]    (JA 37)

---

[6]    As was recognized by the district court, the SPALCF provides coverage for some injuries excluded by the SPAE, but does not include coverage for "mental

21

Employing the plain, ordinary, and common understanding and usages, the terms "emotional abuse," and "verbal abuse" are all synonymous with and interchangeable with the term "mental abuse", and thus even if the Underlying Complaint alleged "non-physical-contact emotional and verbal abuse" such abuse is plainly excluded by the SPAE. *See* Black's Law Dictionary (9th ed. 2009) (defining "MENTAL ABUSE" by reference to "emotional abuse under ABUSE", "PSYCHOLOGICAL ABUSE" by reference to "emotional abuse under ABUSE", "VERBAL ABUSE" by reference to "ABUSE", and "EMOTIONAL ABUSE" as "[p]hysical or verbal abuse that causes or could cause serious emotional injury. — Also termed mental abuse; psychological abuse.")  Indeed, the Eighth Circuit Court of Appeals recently held that the term "mental abuse" is unambiguous and that "[a] reasonably prudent insured would discern that mental abuse is mental maltreatment, often resulting in mental or emotional injury." *Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724, 729 (8th Cir. 2012).  Likewise, here, the alleged emotional, psychological, and mental abuse, including sensory deprivation, suffered by S.P., whether caused by physical or "non-contact" abuse all properly

---

abuse", as that term is excluded from the coverage form's definition of "SEXUAL AND/OR PHYSICAL ABUSE." (JA 35-36, 37, 393) The presence of "mental abuse" in the definition of "Sexual and/or Physical abuse" in the SPAE (along with the absence of "mental abuse" in the definition of "SEXUAL AND/OR PHYSICAL ABUSE" in the SPALCF) demonstrates that the parties specifically intended to include "mental abuse" within the definition of "Sexual and/or Physical abuse."

falls within the unambiguous term "mental abuse" within the ambit of the SPAE. *See Heacker*, 676 F.3d at 726 (holding that insured's actions, including hacking into voicemail and Facebook services, sending disparaging letters and emails, and making anonymous phone calls and texts to harass and defame her victim, constituted "mental abuse" excluded from coverage); *Miller v. McClure*, 742 A.2d 564 (N.J. Super. Ct. App. Div. 1998) (holding that claims for "psychological and emotional damage" fell within policy's "mental abuse" exclusion); *Sentry Claims Service v. Botwick*, Case No. CV030477960S, 2004 WL 1463004 at *4 (Conn. Super. Ct. 2004) (holding that plaintiff's claims for intentional infliction of emotional distress fell within ambit of "mental abuse" exclusion). Because the injuries alleged in the Underlying Complaint fall squarely under the SPAE's definition of "Sexual and/or Physical abuse," no coverage exists for such injuries under either the Commercial General Liability Coverage Form or Errors and Omissions Coverage Part.

Both CHSNC and the Estate argue that the title of the SPAE does not specifically mention "mental abuse," but rather only "sexual and/or physical abuse", and thus posit that CHSNC would reasonably expect that the exclusion applied to only physical injury. However, a policy exclusion's title does not contain all the relevant terms and conditions of coverage or non-coverage. *See Resource Bank v. Progressive Cas. Ins. Co.*, 503 F. Supp. 2d 789, 794 (E.D. Va.

2007) (noting that an "ambiguity does not arise merely because an exclusion appears below an imperfectly descriptive heading" and that "[a] summary heading does not change the plain meaning of the exclusion as a whole or render it ambiguous"). Rather, an exclusion's title is merely intended to alert the insured that coverage is being limited and "put them on notice that the provision should be read." *Id. See also Stanley v. Safeco Ins. Co. of America*, 747 P.2d 1091, 1093 (Wash. Ct. App. 1988) (noting that "[i]t has long been our rule that the caption should never of itself be taken to override the intention of the parties to an insurance policy as shown by the provisions and clauses inserted thereunder") (citations and internal quotation signals omitted). This is true under North Carolina law, as well, where an insured has a responsibility to read its own policy, including all terms and conditions. *See, e.g. Burrell v. Sparkkles Reconstruction Co.*, 657 S.E.2d 712 (N.C. Ct. App. 2008) (holding that coverage for mold damages was capped by mold endorsement, notwithstanding insured's assertion that insurer did not explain the provision, because the insured "had a responsibility to read her own policy.") In this instance, the SPAE's title plainly puts the insured on notice that coverage is being limited, putting the onus on the insured to read the text of the exclusion, which plainly and unambiguously excludes coverage for "Sexual and/or Physical abuse" and (2) plainly and unambiguously provides that as

24

used in the Policies' SPAE "Sexual and/or Physical abuse" includes "mental abuse."

As to the Estate's assertion that Scottsdale could have used alternative language (other than explicitly stating that "Sexual and/or Physical Abuse" includes but is not limited to "mental abuse") in the title of the endorsement (or otherwise) to make it more clear that mental abuse was excluded by the SPAE, it matters not whether there could better alternative ways of stating the exclusion; it only matters whether the exclusion is fairly susceptible to two reasonable interpretations in the context that it is used. *See, e.g., State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc.*, 88 P.3d 986, 992 (Wash. Ct. App. 2004) ("Just because State Farm could have further clarified or expressly defined the term in the manner that ECA asserts, does not make 'own' ambiguous."). In this instance, Scottsdale respectfully submits that, by specifically defining "Sexual and/or Physical abuse" as including "mental abuse," and further stating that it is "the intent of this endorsement to exclude all injury sustained by any person, including emotional distress," the exclusion is susceptible to only one reasonable interpretation, which is that it excludes mental abuse.

### 2. Mental Abuse need not "flow from" physical abuse

In its brief, the Estate posits that only mental abuse that "flow[s] from physical abuse" is excluded by the SPAE. In support of this proposition, the Estate

asserts that the phrase "including but not limited to" should be interpreted as a phrase of "illustrative application" rather than a phrase of enlargement, such that there must be some corresponding physical or sexual abuse for there to be the type of mental abuse being described. The only authority offered in support of the proposition that the phrase "including but not limited to" (as used here) is a term of illustrative application, however, is authority discussing the term "including" <u>by itself</u>. (D.E. 37 at 18-19, 20-23) In this regard, Scottsdale agrees that the term "including" <u>by itself</u> could be interpreted as a term of illustrative application. However, when the words "but not limited to" are added to the same, the phrase is plainly meant to be a phrase of enlargement. *See Nautilus Ins. Co. v. K. Smith Builders, Ltd*., 725 F. Supp. 2d 1219, 1226 (D. Haw. 2010) (noting that the phrase "including but not limited to" is an "expression of enlargement, indicating that the examples that follow are an illustrative non-exhaustive list of examples subject to expansion."). In no way and no sense can the phrase be interpreted to be any sort of *restriction* on the terms that follow, however, as would be required to understand that the terms that follow must "flow from" the original term. Indeed, in order for the reading of the Estate to be correct, the Court would need to add language to the SPAE such that it read "including but not limited to **resultant**…mental abuse," "including but not limited to…mental abuse **flowing therefrom**," or "including but not limited to mental abuse **as a result of such**

26

**sexual or physical injury or abuse**."  The SPAE does not contain such language, however, and the Court is not permitted to add such language under North Carolina law.  *See Hemric v. Groce*, 609 S.E.2d 276, 282 (N.C. Ct. App. 2005) (holding that "the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, **nor insert words into it**, but must construe the contract as written.") (emphasis added); *Woods*, 246 S.E.2d at 777 ("[I]f the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.").  Thus, the proper reading of the specially defined term "Sexual and/or Physical abuse" must include **all** "mental abuse," not just mental abuse that "flows from" "sexual and/or physical abuse."

Moreover, even if the phrase "including but not limited to" were a phrase of "illustrative application," it does not necessary mean that any "mental abuse" must "flow from" or "result from" sexual or physical abuse.  Rather, "mental abuse" is simply an "illustrative application" of "sexual or physical injury or abuse."

Finally, as to CHSNC's and the Estate's citation to *Scottsdale Ins. Co. v. Educ. Mgmt. Inc.*, Case No. CIVA 04-1053, 2006 WL 2803052 (E.D. La. 2006) (hereinafter "Education Management") in support of their argument that the SPAE should be read to exclude only "mental abuse *flowing from* sexual or physical

abuse", *Education Management* is an unpublished decision from another jurisdiction whose holding has not been cited with approval by any court a single time. Even if this Court were to consider *Education Management* in analyzing the applicability of the SPAE to the instant case, the case was simply wrongly decided, as the United States District Court for the Eastern District of Louisiana read "including but not limited to" as a term of restriction, requiring that the words that followed "including but not limited to" to "flow from," "resulting from," or "arise from" the "sexual and/or physical abuse" -- without any reasoning, explanation, or analysis in support of such a reading. As noted above, the phrase "including but not limited to" has been otherwise universally interpreted as a phrase of expansion, not a phrase of restriction or limitation. By interpreting the phrase "including but not limited to" as limiting the words that follow, the court in *Education Management* was inserting words of restriction into that policy that were not there in the first place, thereby changing the meaning of the policy. This would not be permitted under North Carolina law. *See supra* at 26-27. Accordingly, by employing North Carolina rules of policy interpretation, as it must, this Court cannot follow the unpublished opinion in *Education Management* in its interpretation of the SPAE that was incorrect as decided in that case and would certainly be incorrect under North Carolina law.

28

Finally, even if the Court were to disregard this plain rule of policy interpretation, *Education Management* presented a unique situation, which is certainly factually distinguishable from the instant case, because in *Education Management* there were **<u>no</u>** allegations of any physical abuse. Thus, in that case, the sole, narrow issue was whether mental abuse admittedly unaccompanied by any sexual or physical injury or abuse would be excluded by the SPAE. 2006 WL 2803052, *3 (noting that "Scottsdale, Education Management, and Deborah Leslie, the only remaining intervenor, agree that there was no physical or sexual abuse"). Here, on the other hand, physical abuse is explicitly alleged, and the allegations of mental abuse are inextricably intertwined with, and part and parcel to, the allegations of physical abuse (particularly the alleged isolation and restraint of the adopted children). (*See* JA 252 ¶ 60.ii; 255 ¶ 60.bbb; 255 ¶ 60.zz; 263 ¶ 99.d; 268 ¶ 101.a; 263 ¶ 99.3; 264 ¶ 99.g; 269 ¶ 106)

Indeed, a close reading of the allegations of the Underlying Lawsuit not only distinguishes this matter from *Education Management*, given that the allegations of "mental abuse" are so intimately connected to the "physical abuse," but also reveals that the Estate's attempt to distinguish between "mental abuse" and "mental abuse naturally flow[ing] from physical abuse" is pure sophistry. Any and all "mental abuse" alleged in the Underlying Lawsuit is so inextricably linked to the "physical abuse," such that -- even if *Education Management* were controlling

and only "mental abuse that flow[ed] from physical abuse" were excluded by the SPAE, which is not a proper reading of the clear, explicit and controlling definition – all the injuries alleged in the Underlying Lawsuit would still fall under the umbrella of the SPAE.

### b. The SPALCF provides the only coverage for the injuries alleged in the Underlying Lawsuit.

CHSNC asserts that even if the SPAE were valid, coverage still arises under the E&O Coverage Part of the First Policy and Coverage B of the Second Policy. (CHSNC Brief 23-36).  CHSNC is simply mistaken in this regard.  Rather, the only coverage for the Estate's claims is under the SPALCF, up to the limits of liability of $100,000 for each claim and $300,000 aggregate.

### i. The SPAE applies to all claims against CHSNC, including claims for wrongful death.

The SPAE bars any claim – regardless of the nature of the claim – "arising out of or resulting from 'Sexual and/or Physical abuse…' by any other person" – including claims that might otherwise generally implicate the Errors & Omissions Coverage Part and the Commercial General Liability Coverage Form (particularly Coverage B).  (JA 37)  No matter how the Estate pled such a claim or how CHSNC might try to characterize the same (whether as a claim for "wrongful death for which false imprisonment was a cause" or a claim for "false imprisonment"), S.P.'s <u>injuries</u> "arise out of" the horrific abuse suffered by S.P. at the hands of his

30

adoptive parents; therefore, the SPAE applies.  *See, e.g. Allstate Ins. Co. v. Bates*, 185 F. Supp. 2d 607, 612-13 (E.D.N.C. 2000) (holding abuse exclusion excluded all claims arising out of sexual molestation of minor children, no matter how such claims were pled, as the exclusion is tied to the nature of the injury and not the type of underlying claim).  *See also Nautilus Ins. Co. v. Our Camp Inc*., 136 F. App'x 134, 138 (10th Cir.2005); *Flores v. AMCO Ins. Co*., Case No. CVF071183LJODLB, 2007 WL 3408255, at *8 (E.D.Cal. Nov. 15, 2007) *aff'd*, 323 F. App'x 587 (9th Cir.2009); *Philbrick v. Liberty Mut. Fire Ins. Co*., 934 A.2d 582, 585–86 (N.H. 2007).[7]    Because S.P.'s injuries (including his death) uncontestably arise out of "Sexual and/or Physical abuse," they fall within the ambit of the exclusion – and thus are not covered by the Errors & Omissions

---

[7]  Only one federal court has held that an exclusion precluding coverage for bodily injury "arising out of" abuse does not apply to a claim for negligent supervision.  *See St. Paul Fire & Marine Ins. Co. v. Schrum*, 149 F.3d 878 (8th Cir. 1998).  *Schrum* has been universally rejected by courts outside the Eighth Circuit.  *See Bates*, 185 F.Supp.2d at 611 ("Without the molestation there would be no injury and thus, no basis for the negligence claim.  Therefore, this court explicitly rejects the conclusion reached by the Eighth Circuit in *Schrum*.").  As in *Bates*, the exclusion here is specifically tied to the nature of the injury, not the type of underlying claim, and accordingly the analysis of *Schrum* must be rejected.  Indeed, even the Eighth Circuit itself has distinguished *Schrum*, explaining that "[n]egligent supervision of a minor is a unique claim under Missouri law because it is the obligation and ability to supervise and control the child, not the instrumentality that caused the harm, that is the decisive factor."  *American Family Mut. Ins. Co. v. Co Fat Le*, 439 F.3d 436 (8th Cir. 2006).  *See also Westfield Ins. Co v. Merrifield*, 2008 WL 336789 (S.D.W.Va. 2008) (distinguishing *Schrum* as involving a claim for negligent supervision of a minor, which is unique under Missouri law).

Coverage Part nor the Commercial General Liability Coverage Form (particularly Coverage B).[8]

Further, as was recognized by the district court, this is not a case involving multiple causes of the injury at issue (S.P.'s wrongful death). *Cf. State Capital Ins. Co. v. Nationwide Mut. Ins. Co*., 350 S.E.2d 66 (N.C. 1986) (holding that homeowner policy provided coverage where both negligence in handling a gun and the use of a vehicle were causes of injury, and the policy only excluded injuries arising out of use of a vehicle). Rather, here the set of actions giving rise to liability (arguably) could be characterized in two ways: as acts of false imprisonment and acts of physical (and mental) abuse. *See* 7 Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt, *Couch on Ins*. § 101:53 (2013) (noting that, when a court evaluates multiple alleged causes, "the initial task is determining whether there really are two or more causes at issue or whether there is merely one cause which is being assigned different labels"); *Chadwick v. Fire Ins. Exchange*, 21 Cal. Rptr. 2d 871, 874 (Cal. Ct. App. 1993) ("An insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss."); *Austin Mut. Ins. Co. v.*

---

[8] CHSNC attempts to distinguish *Bates* by noting that it involved a policy with an occurrence-based coverage grant, whereas here the Errors & Omissions Coverage Part is at issue. This distinction is irrelevant, given the focus of the exclusion on the nature of injuries – and the fact that the SPAE specifically applies to the Errors & Omissions Coverage Part.

*Klande*, 563 N.W.2d 282 (Minn. Ct. App. 1997) (holding that for concurrent cause rule to apply, there must be divisible concurrent causes and question whether causes could have operated independently of one another to bring about loss). Because the actions giving rise to liability were acts of "Sexual and/or Physical abuse" (as defined by the SPAE),  any coverage for liability arising out of resulting from those acts is excluded by the SPAE.

### ii.  Even if the SPAE did not apply, Coverage B is not even nominally triggered.

Coverage B states that Scottsdale "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."  (JA 20-22)  Personal or advertising injury is subsequently defined as "injury…arising out of one or more of the following offenses: (a) False arrest, detention or imprisonment…."  (JA 29)  CHSNC argues that the Underlying Lawsuit sufficiently alleges elements of a claim for "false imprisonment" to support indemnity coverage under Coverage B. CHSNC is simply wrong, however, as the Estate does not assert a claim against CHSNC for false imprisonment, nor could they under North Carolina law.

The only claim in the Underlying Complaint against CHSNC is a claim for negligence, based on its alleged failure to properly vet the adoptive parents.  (JA 275-278)  A cause of action for "false imprisonment" is nowhere alleged in the Underlying Complaint.  In fact, the phrase "false imprisonment" does not even

appear anywhere in the Underlying Complaint. Rather, in a misguided and faulty attempt to create coverage, Defendants are attempting to read a claim of false imprisonment into the Underlying Complaint by rebranding the claim for physical abuse against the adoptive parents.[9] While few courts have considered this novel argument (made in an effort to find coverage for "false imprisonment"), those courts that have been presented with the argument have soundly rejected it. *See State Farm Ins. Co. v. Bruns*, 942 A.2d 1275 (N.H. 2008) ("The facts as they are alleged in the initial declaration indicate that any false imprisonment or invasion of privacy was the result of the sexual assaults. Put another way, as they are alleged, the claims for invasion of privacy and false imprisonment are merely rebrandings of the claim for sexual assault."). Indeed, Scottsdale submits that even if a claim for false imprisonment had been explicitly pled in the Underlying Complaint, to the extent such false imprisonment were simply part of a large pattern of physical abuse, Coverage B would not be implicated. *See Selective Ins. Co. v. Oglebay*, 242 Fed. Appx. 104 (4th Cir. 2007) (holding that, under Maryland law, there was no coverage for claims of sexual abuse against driving instructor, although policy

---

[9]  CHSNC has never articulated or explained which particular allegations from the Underlying Lawsuit demonstrate the alleged "false imprisonment." Scottsdale presumes that that alleged "factual allegations" of false imprisonment to which CHSNC refers are the allegations related to the adoptive parents wrapping S.P. in blankets and placing him in the attic, where he suffocated to death. Even if this activity could plausibly be construed as alleging a "false imprisonment" of S.P. by the adoptive parents, it more plainly falls under the larger umbrella of "physical abuse."

provided coverage for damages resulting from "false imprisonment," and underlying lawsuit specifically alleged false imprisonment, where the factual allegations supporting the false imprisonment claim arose exclusively from instructor's sexual misconduct); *Cole v. State Farm Fire & Cas. Co.*, 25 Fed. Appx. 791 (10th Cir. 2002) (holding that insurer had no duty to defend insured in false imprisonment claim, where restraint was integral part of an otherwise excluded sexual assault).

Moreover, to the extent the Underlying Complaint could be construed to actually allege false imprisonment against the adoptive parents, it nowhere alleges false imprisonment by the insured, CHSNC, as would be required for coverage for the claim against CHSNC to exist under Coverage B. *See Massachusetts Bay Ins. Co. v. Bushmaster Firearms, Inc.*, 324 F. Supp. 2d 110 (D. Me. 2004) (holding that claims of DC sniper victims against gunmaker did not fall within ambit of gunmaker's policy, as underlying lawsuit did not allege "false imprisonment" by gunmaker itself); *Mountain States Mut. Cas. Co. v. Hauser*, 221 P.3d 56 (Colo. App. 2009) ("Under the policy coverage, Mountain States is only liable to indemnify amounts for which Mulligan's became liable, and Mulligan's would be liable for false imprisonment by Gondrezick only under a theory of respondeat superior. However, no such claim was proved against Gondrezick, nor was a judgment for false imprisonment obtained against Gondrezick, and therefore no

35

respondeat superior liability fell upon Mulligan's.  Hence, Mountain States had no

obligation to indemnify Mulligan's under such coverage even if a claim for false

imprisonment were extrapolated from Hauser's pleadings.").[10]    Even if the

Underlying Complaint did directly allege a claim of false imprisonment, such a

tortious act was not committed by CHSNC, and thus there could be no coverage

under Coverage B.

Finally, and most importantly, under North Carolina law a claim for false

imprisonment does not survive the death of a decedent.  *See* N.C. Gen. Stat. 28A-

18-1; *Estate of Fennell v. Stephenson*, 528 S.E.2d 911, 916, *reversed on other*

*grounds* 554 S.E.2d 629 (N.C. 2001).    As to CHSNC's assertion that false

imprisonment can nonetheless be the cause of a wrongful death action per N.C.

Gen. Stat. § 28A-18-2 (which permits the personal representatives for a decedent

to bring an action for wrongful death "caused by a wrongful act"), if the Estate

brings a claim under N.C. Gen. Stat. § 28A-18-2, it is a claim for wrongful death,

not false imprisonment (or whatever other "wrongful act" caused this death).  Per

---

[10]  Notably, both Maine and Colorado insurance case law applies the same general "rules of construction" as North Carolina courts.  *See Wilson v. Automobile Owners Ass'n Ins. Co.*, 366 P.2d 654, 655 (Colo. 1961) ("It is too well settled to warrant lengthy citations of authority that insurance policies are to be construed most strongly against those who write them, i.e., the insurance companies"); *Fire Ins. Exchange v. Bently*, 953 P.2d 1297, 1300 (Colo. App. 1998) ("[C]overage provisions in an insurance contract are to be liberally construed in favor of the insured to provide the broadest possible coverage."); *Jack v. Tracy*, 722 A.2d 869, 871 (Me. 1999) ("Standard insurance policies are construed most strongly against the insurer.")

N.C. Gen. Stat. § 28A-18-1, as a matter of law, the Estate cannot recover damages on behalf of S.P. for any alleged false imprisonment. Accordingly, no coverage can arise under Coverage B because a claim for false imprisonment cannot be brought on S.P.'s behalf. *See Case v. Stewart*, Case No. 3:03 CV 388, 2007 WL 37741 (W.D.N.C. 2007) (recognizing that a cause of action for false imprisonment does not survive the death of the person in whose favor it has accrued); *McIntyre v. Josey*, 79 S.E.2d 202 (N.C. 1953) (same). Thus, CHSNC's and the Estate's efforts to shoehorn coverage under Coverage B must fail, as (even if the Estate had explicitly plead a claim of false imprisonment, against the adoptive parents or CHSNC, which it did not) the Estate could not bring a claim for false imprisonment on behalf of S.P., as a matter of law.

### iii. The E&O Coverage Form excludes any claims covered under CGL form.

Pursuant to Exclusion (p) of Section 2—Exclusions to the Errors and Omissions Coverage Part, the Errors and Omissions Coverage Part of the Policies does not provide coverage for "[a]ny claims covered under the Commercial General Liability Coverage Form." (JA 43) Thus, to the extent that the negligence claim against CHSNC in the Underlying Lawsuit would be entitled to coverage under the Commercial General Liability Coverage Form, which Scottsdale specifically denies, the Errors and Omissions Coverage Part will not provide any indemnity coverage.

37

## CONCLUSION STATING PRECISE RELIEF SOUGHT

For the foregoing reasons, Plaintiff-Appellee Scottsdale Insurance Company respectfully requests that this Court affirm the judgment of the district court.


Respectfully submitted, this the 24th of February 2014.

PHELPS DUNBAR LLP


s/  Kevin M. O'Brien
Kevin M. O'Brien,
obrienk@phelps.com
Robert M. Kennedy, Jr.
robert.kennedy@phelps.com
GlenLake One
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612-3723
Telephone:  919-789-5300
Facsimile:   919-789-5301
*Attorneys for Plaintiff-Appellee Scottsdale*
*Insurance Company*


## REQUEST FOR ORAL ARGUMENT


Scottsdale respectfully submits that oral argument is unnecessary.  The facts and legal arguments are adequately presented in the briefs, and the law that controls this case is not difficult to apply.  Therefore, this appeal should be placed on the Court's summary calendar pursuant to Federal Rule of Appellate Procedure 34(a) and Local Rule 34.2

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[X ] this brief contains [9,094] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this brief uses a monospaced typeface and contains [        ] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [Microsoft Word 2010] in [14pt Times New Roman]; or

[ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

PHELPS DUNBAR LLP


<u>s/  Kevin M. O'Brien</u>
Kevin M. O'Brien,
obrienk@phelps.com
Robert M. Kennedy, Jr.
robert.kennedy@phelps.com
GlenLake One
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612-3723
Telephone:  919-789-5300
Facsimile:   919-789-5301
*Attorneys for Plaintiff-Appellee Scottsdale Insurance Company*

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

## No. 1953(L); 13-1954
## (5:12-CV-00081-FL)

_____


SCOTTSDALE INSURANCE COMPANY,

     Plaintiff - Appellee,

v.

CHILDREN'S HOME SOCIETY OF NORTH CAROLINA, INC.; RONALD
E. FORD, SR., Administrator of the Estate of S.P.

    Defendants-Appellants.

_____

## CERTIFICATE OF SERVICE

   I hereby certify that on February 24, 2014, the foregoing document was

served on all parties or their counsel of record through the CM/ECF system if they

are registered users, or if they are not, by serving a true and correct copy at the

addresses listed below:

   R. Thompson Wright
   tom.wright@hillevans.com
   Joseph R. Beatty
   joe.beatty@hillevans.com
   Hill, Evans, Jordan & Beatty, PLLC
   PO Box 989

Greensboro, North Carolina 27402
*Attorneys for Defendant-Appellant Children's Home Society of North Carolina, Inc.*

Jerome P. Trehy, Jr.
trehylaw@gmail.com
Jerome P. Trehy, Jr., PA
7106 Wiley Mangum Rd
Bahama, North Carolina  27503

Jesse H. Rigsby, IV
rigsby@nctrial.com
Twiggs, Strickland & Rabenau, P.A.
4309 Emperor Boulevard, Suite 410
Durham, North Carolina 27703

*Attorneys for Defendant-Appellant Ronald E. Ford, Sr., Administrator of the Estate of S.P.*

PHELPS DUNBAR LLP


s/  Kevin M. O'Brien
Kevin M. O'Brien,
obrienk@phelps.com
Robert M. Kennedy, Jr.
robert.kennedy@phelps.com
GlenLake One
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612-3723
Telephone:  919-789-5300
Facsimile:   919-789-5301
*Attorneys for Plaintiff-Appellee Scottsdale Insurance Company*